The first case for argument this morning is 172122, Robert Bosch v. Iancu. Mr. Haneman, when you're ready. Good morning, your honors, and may it please the court. We're here on technology. The first patent that I'd like to discuss this morning is the 264 patent. This is the patent where the board, the same panel of the board, confronted with the same evidence and word for word the same arguments. Well, the board's conceded that. Correct. My point. Check. 698. I'm sorry, I don't want to undo the check, but we would remand it to the board to do whatever needs to be done, right? Well, no, the director has conceded that reversal is appropriate, your honor. Then I thought we could discuss the 698 patent. That's the patent having to do with the curve of the wiper blade and the pressure distribution of the wiper blade. The sole claim of that patent was held obvious over a combination of two Appell patents and a patent to Arai. The Appell patents describe wiper blades that are circularly curved. Can I just ask you as a threshold matter, because I think we've all spent a lot of time on this case before, is this your argument that the board misstated the Appell reference in its analysis? Well, the board seemed to misstate at different points in its opinion. It made contradictory findings of fact, but seemed to misstate both the Appell and Arai. Okay, so why don't you show us, give us the pages of the opinion as you speak. I think if we look on page A7694, if we're talking about the Arai reference, and this part of the opinion was complicated by the original prosecution of the 698 patent, which involved rejections, board appeals, and a number of other things. Eventually issuance of Claim 1. Both the petitioner and the board seemed to spend a great deal of time discussing the original prosecution, even though nobody argued that the original prosecution was controlling in any respect. On page A7693 to 7694, the board seemed to adopt what it found to be the earlier board's fact finding about the curve of the Arai reference. This is important because, as anybody can see looking at the figure, the Arai disclosure is of a wiper blade that is curved more sharply at the ends and less sharply in the middle. There was a stray rejection in the original prosecution that seemed to put that in question. The board wrote, we agree with and adopt the previous board's findings of fact concerning Arai. Later, on page A7694, the board also adopted the examiner's fact finding in the original prosecution. The examiner's fact finding was correct that the conventional backing member of Claim 8 being curved sharper in the center section than in the end sections was not in Arai. What about figure 7 in Arai? Figure 7 in Arai is an experimental result. Arai throughout the patent, just like Appel, just like everybody in the prior art dealing with this. Does that mean the experiment went Arai? Yes, your honor. I do. The experiment shows some fluctuation in force distribution along the length of the blade under one of three sets of test conditions. According to the board, it shows force distribution less at the ends than in the middle of this Arai example. If this were an anticipation case, I think that would be very important. If we found the correct curvature in Arai, which we do not, then you could take this one experimental result and say, aha, we have an anticipation of the 698 patent. Dealing with obviousness, we have to look at the reference for everything that it teaches. What it teaches throughout is the desirability of uniform force distribution. The experiment that they reported was a failure in the sense that it did not achieve uniform force distribution. What a reference teaches is a question of fact, and we owe the board deference on facts. We need to find substantial evidence in support of the board's fact findings. And I'm not arguing the question of what figure 7 describes. What I'm arguing is that in view of the whole disclosure of Arai and the whole disclosure of Appel, both of which are directed to uniform force distribution, there's no way to say that one of skill and the art would take the shape of one embodiment from one Appel patent and modify it to have the force distribution of the failed experiment reported in Arai of figure 7. When both of them call for uniform force distribution throughout, which is exactly the opposite of the 698 patent, the whole invention of which was that uniform force distribution is not desirable because it has undesirable results in practice. What about Appel? Appel talked about increasing pressure applied at the center. And what Appel is describing about there, what Appel is describing there is the process of the curve. Are you talking about Appel 551 or 770? Both of them, Your Honor. Well, specifically, you were about to describe something. I just wanted to know whether you were pointing at 551 in particular. I don't recall whether the progressive force distribution language is in 551 or in 770. But it's incorporated. In any event, 551 is incorporated in 770. Our position is that 551 is only incorporated for its uniform force distribution, but yes, let's assume that it's entirely incorporated in 770 since there's really nothing else in 551 anyway. I think the progressive curvature is in 551. That's a pretty important ingredient since, by your argument, it's not in the Arai reference. Agreed, Your Honor. But the lesser curvature at the ends is in Arai 551. I mean, Apple 551, right? Yes, there's a parabolic curve described in Appel 551, which would be curved less at the ends than in the middle. That's correct. As far as force distribution, only uniform force distribution is described in Appel, and that's the critical force distribution point. The progressive force distribution that Your Honor was describing from the Appel patents is describing the process where the wiper blade is pushed onto the windshield, where the pressure is applied in the middle, and as the blade flattens on the windshield, the pressure evens out as it pushes down and evens out. That's not a description of a static state pressure being anything other than uniform. So our contention is, as I said, there's really no motivation for anybody to take the parabolic curve in Appel, which is taught to provide uniform force distribution, modify it in view of Arai, which also teaches uniform force distribution, although it discloses an example where that didn't happen, and come up with the invention of the 698 patent, which is designed specifically to avoid uniform force distribution because of the problems heretofore unknown that come from that. Go ahead. Look at 7702 of the board's opinion. So they seem to have maybe one, maybe more than one basis for finding motivation to combine. So I think most of the discussion so far, if I've understood it correctly, went to what they're talking about in the middle of the page about Appel. This is all about Appel when they're talking about what Appel teaches. But then at the bottom of the page it says maybe this is another, an alternative basis for finding motivation. Appel 770 also discloses various constructional approaches incorporating progressive dimensional variations in free-form curvature. And then they have a citation to Appel. The citation seems to be to the 551, which says it's possible to combine a number of different ways these various constructional approaches, blah, blah, blah, blah, blah. So why is, do you read that as another basis for motivating the combination of Appel and Arai, and why is that not sufficient for an affirmance here? No, I don't read it that way. What that section of the patent is describing is that you can combine different shapes of curves with different thickness progressions, different width progressions of the beam in order to come up with the desired uniform force distribution. That's what that section of the patent is talking about. And I should mention that the practical compromise language to which the board also refers does not teach what the board seemed to suggest that it teaches. What it is teaching is another way of getting at uniform force distribution, pointing out that the rubber wiper strip itself has a role in force distribution, and the practical compromise language says you can do something just short of a circular curvature and still get a satisfactory force distribution because the rubber wiper strip itself will smooth out the pressure distribution. So again, there's nothing in Appel suggesting anything other than uniform force distribution, and again, that's the opposite of the 698 patent. The whole invention of the 698 patent was noting that you have a problem when you have uniform force distribution. You get a flacking noise when the rubber flips over all at once, and you avoid it by specifically designing the blade to not have uniform force distribution. Although that limitation was not in the claim, the limitation with respect to the reduction of noise. It was simply a consequence of, you argue, the limitations that were in the claims. Yes, that's right, and it's taught in the patent as a consequence of that limitation. Now, on the curvature issue in Arai, there's a sentence in Arai that you're well aware of. The curvature, it says, and I'm reading column 1, line 60, is preferably small at opposite-edge portions and large at the central portion. I take it that your argument is that has to be interpreted to mean, particularly in light of figure 5, that the radius of curvature is preferably small at the opposite edge, which means that the actual sharpness of the curve is greater. That's your position on that, right? Exactly. Although we have no reference to radius of curvature in the patents, so far as I can tell. There is a reference in Appel to radius of curvature, but not in Arai. Correct, Arai was— So how do we know that—do we know that that's what they must mean by looking at figure 5? Well, we know we have expert testimony at, I believe, page 8405 from our expert explaining that. We also have the fact that neither the petitioner nor the board was dealing with an anticipation argument at all, and if Arai was curved opposite to the way that is shown in its figure, you would have an anticipation argument. Well, right, but you would also have a stronger—at least as strong and perhaps stronger obviousness argument because you would have two different references, both of which give you curvature. Oh, yeah, I was merely pointing out that nobody had ever argued that that language meant the opposite of what's shown in the figure, and as was confirmed by our expert in his declaration, that it's curved more sharply at the end. But isn't that what—where you say the board the first time through, the BPAI, got it wrong? Where they went wrong? It's a very difficult prosecution to unpack because there was rejection of several related claims in different inconsistent ways. There is certainly arguably a fact-finding by the board that was never urged by the examiner in the original prosecution about Arai in the way that you describe. Right. But I think that that's something that the petitioner never raised and something the board didn't rely on. The picture is fairly self-explanatory, and as I said, we have expert testimony confirming that. Okay, you're well into your rebuttal, so why don't we hear from the other side and we'll reserve some more time. Yes, Your Honor. Good morning. May it please the Court. I think what I'd like to add to the discussion starting off is to step back and think about the state of the art and what Arai and Appel show us about what was going on in the windshield wiper field for decades before the invention of this patent. I think what the art shows us is that artisans have been working with the same sorts of materials for a long time. It's basically been rubber, metal strips, gravity, and glass. And there have been a limited number of ways that— And wind. I'm sorry? And wind. And wind, too. Although not pertinent to this patent, the 698. Exactly. And Arai and Appel show us that there have basically been a limited number of ways that artisans, and techniques that artisans have had to adjust the pressure in a blade, the rigidity of the rubber, the placement of the arm on the wiper, and the curvature. And what Arai and Appel are doing, they're really approaching the problem here from the same perspective. And so when Judge Prost mentioned the board's observation about Appel's discussion about progressive dimensional variations, I think it really ties in with that concept. How does that give us the motivation to combine the two references? Well, I agree that the board really, I think, articulated two alternative motivations with respect to that progressive dimensional variation concept. If you're one of skill in the art and you're sort of working incrementally with these blades and trying to get the pressure right, it's really just a matter of small tweaks to try to figure out how to get there. Well, the key thing, though, isn't it, is what constitutes the pressure right? As far as Appel and Arai are concerned, the right pressure, it seems to me, is suggested to be equal pressure across the entire expanse of the blade, whereas the claim in the 698 is directed at a different pressure at different points in the blade.  Arai and Appel both absolutely talk about the desirability of uniform pressure, but it is also true that the inventor's motivation does not have to be the same as the motivations of those who came before the inventor. And Appel does make clear that non-uniform distribution is an acceptable compromise. And Appel shows us that... Are you referring to the board's analysis where it talks about a practical compromise? Yes, and the board cited that discussion, and that comes straight out of Appel, and the board says that is a legitimate motivation. And there's a problem with that, isn't there? I mean, didn't the problem... I mean, the board's reliance on motivation, I mean, the other side spends a lot of ink, and I think they make a fair point about how the board was misconstruing what Appel said in that regard. Well, we can go to Appel and read what he says, and I think... I mean, if they're referring to the practical compromise, isn't it right that in the reference it still results in uniform contact force? That's not how I read it. The way that I read what Appel is saying is that Appel has a backing, and I'm sort of using an inelegant, basic way with my fingers of showing this, but you've got the backing of the blade, and then you've got the blade under it. And whatever pressure that the backing is applying on the blade is going to be the same. Ultimately, we're talking about a fact-finding that the board made, and I think what I described in the fact-finding that the board made is at least reasonable. So even if there is an alternative way of looking at it, I think the way that the board looked at it at least is reasonable. You mean the board says, and they're looking at this paragraph, Gray cites it at length at page three, and the board states that this passage teaches non-uniform contact force, and specifically it teaches reduced contact force at the ends. And I mean, whatever standard of review we use for reviewing it, isn't it true that the passage does not teach that? Well, if I'm understanding, Your Honor, what you're quoting, I think that is consistent with what Appell says, that there could be reduced contact force at the end of the blades. And again, Appell is saying that as a satisfactory compromise, that there could be a limited degree of non-uniform spring load. So I think between Appell and, again, when we look at figure seven from Arai, we are looking at examples of blades that have non-uniform force distribution. And whether or not that was ultimately what Arai and Appell desired or thought was ideal, it at least shows that it was being done. And the claim language here is extremely broad. It doesn't say anything about noise reduction. It doesn't say anything about particular levels of pressure that are needed to reduce noise. All it says is that— Well, suppose it did have a limitation about noise reduction. Would your argument be any different, or would you be simply saying that noise reduction is an inherent feature of reduced pressure at the ends, and therefore it's still obvious? I mean, I think it could be a closer case if the claims were limited to something that specific, because then I think it would be harder to disregard what Arai and Appell were saying about desirability of uniform force. But when the claim simply is reciting non-uniform force distribution, that's exactly what we're looking at. It had already been done in these references. Suppose that Bosch had discovered that wipers tend to deteriorate at the ends more quickly than in the middle, and further they discovered that the deterioration could be alleviated by having less pressure at the ends, and therefore they wrote a claim very much like the claim here, with it focused on less pressure and less curvature at the ends. Do you think that would also be rendered obvious by a combination of Arai and the Appell references? I think it would be the same answer again, because if we're dealing with a claim— The same answer as which? The same answer as to my immediately proceeding, or the same answer as to this case? I think it would—if I understand Your Honor's question correctly, the hypothetical is that if it were found that the reduced pressure prevented deterioration, would that be not— So their claim is to a wiper that lasts 50% longer than the wipers with uniform blade pressure. Well, so in that example, I think there is a limitation that's something more than we have here, and so I think that might be a different case than we're dealing with here. We don't have anything about noise. We don't have anything other than the very fact that there is non-uniform force distribution recited in this claim. So unless there are any further questions, I will yield the remainder of my time. What do you think—and let me just ask you this question because it came up in the first argument— what do you think is dispositionally the proper thing for us to do with respect to the—what is it—294 patent? 264. 264, on which the PTO has conceded error. Is it simply to send it back to the Board for a correction of what the Board had previously done, or to just enter an order saying reversed, period? In our brief, we conceded that reversal would be appropriate in this case, and merely because it was just an up-or-down sort of black-and-white situation where one Board decision came to one conclusion and the other Board decision came to the other. And if the Board hadn't lost jurisdiction before it could have fixed it, the Board could have fixed it on its own, but there's really nothing else to do at this point. Thank you. Your Honors, it's important that the 698 claim does not recite non-uniform force distribution per se. It recites a particular kind of non-uniform force distribution, and that's what we have to find in the prior art, is that particular kind of non-uniform force distribution. Talking about what artisans knew in the art for years, artisans before Bosch never knew how beam blades work in practice. It's undisputed that Bosch made the first commercially viable beam blade, and in the course of its development discovered for the first time that uniform force distribution is a problem, and discovered for the first time with respect to the 974 patent that wind lift is a problem. Bosch developed these hugely successful products, discovered the problems, and solved them, and then took patents on the solutions, which is exactly how the system is supposed to work. On the 974 patent, the Barth patent was raised as an additional ground for obviousness. It was the sole evidence of motivation to combine. We don't agree that it provides motivation to combine, but we never had an opportunity to respond to it in the Board. Okay, I'm just getting a little anxious because you're talking about things we didn't talk about in the initial argument, so Red has not had a chance to respond. So you want to stick to the 698 or what we were discussing in here earlier? Then I'm complete, Your Honor. I love my other two patents, too, and would like to talk about them, but we didn't get a chance. Thank you. Well, you had a chance. Fair enough. Well, we have to brief. Thank you. Thank you. Thank both sides on the cases submitted.